IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D
MAY 25 2012
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

BARBARA KATES, )
)
Plaintiff, )
)
)
v. ) CIVIL NO. 3:11-cv-304-REP
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )
)

## REPORT AND RECOMMENDATION

Barbara Kates ("Plaintiff") has worked as a receptionist, certified nurse's assistant, office nurse and medical clerk. She alleges that she suffers from degenerative disc disease and an affective disorder. On July 15, 2008, Plaintiff applied for Social Security Disability ("DIB") with an onset date of December 1, 2007, under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on March 8, 2011. Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ did not apply the proper legal standard when weighing her treating physician's opinion and evaluating Plaintiff's credibility.

In her decision, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. (R. at 25.) In doing so, the ALJ rejected Plaintiff's statements concerning the intensity and limiting effects of her pain as not credible, as it was not supported by the objective evidence. (R. at 26.) The ALJ also rejected the opinion of Plaintiff's treating

physician as inconsistent with the medical evidence. (R. at 27.) Plaintiff alleges that the ALJ erred, as her finding was contrary to legal standards and not supported by substantial evidence. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 8-15.) More specifically, Plaintiff complains that the ALJ did not properly weigh the opinion of her treating physician and applied an incorrect legal standard when evaluating her credibility. (Pl.'s Mem. at 8-15.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment and motion to remand (ECF No. 9) be DENIED; that Defendant's motion for summary judgment (ECF No. 11) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. MEDICAL HISTORY

Plaintiff's chief complaint is that the ALJ did not weigh the opinion of her long-time treating physician, Dr. Donald D. Carver, who had also been her employer. (*See* Pl.'s Mem. at 8-13; R. at 170.) Plaintiff further complains that the ALJ used an improper standard of evaluation when determining her credibility. (Pl.'s Mem. at 14.) As the questions before the Court pertain primarily to Plaintiff's back pain, the Court will summarize that evidence below.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

### A. Plaintiff's Medical History

Plaintiff has a history of complaining of chronic pain in her lower back and thigh. (*See* R. at 322, 395, 404.) In February 2008, Plaintiff's gait, station, weighted heel and toe walking, and straight leg raise were noted as normal. (*See* R. at 322.) In February and May 2008, Plaintiff underwent palliative injection therapies for her back pain. (*See* R. at 322, 320.)

In June 2008, Plaintiff told Dr. Carver that she need medication for her "mild-moderate" back pain, and that she was already using Percocet at night. (R. at 293.) Dr. Carver prescribed Tramadol. (R. at 293.) In July 2008, Plaintiff indicated that her pain had not been relieved from her injection therapies. (R. at 320.) Plaintiff's lower extremities, pain referral with straining, and muscle tone and bulk were all normal. (R. at 320.) Additionally, Plaintiff's gait, station, and heel and toe weight bearing were all normal. (R. at 320.) However, her straight leg raise was "trace positive" on the right side. (R. at 320.)

On September 8, 2008, Plaintiff was diagnosed with multilevel degenerative disc changes based on an MRI that indicated mild disc space narrowing and "rightward lateralizing disc bulging or right foraminal disc components at L2-3, L3-4 L5-S1."[2] (*See* R. at 395-96.) She was referred to a neurosurgeon to consider surgery, but the neurosurgeon determined that her condition did not have a surgical remedy, because she had mechanical back pain. (R. at 404.) The neurosurgeon also noted Plaintiff's gait and station were fairly normal and that she had no focal motor weakness or atrophy. (R. at 404.) Her heel-toe walk was normal, as were her straight leg raises. (R. at 404.) Plaintiff had full strength in her legs and the neurosurgeon was able to trace the nerve roots from the MRI. (R. at 404.)

---

[2] L2, L3, L4, and L5 are one of the five symbols for the "five vertebrae between the thoracic vertebrae and the sacrum" and S1 is one of the five symbols for "the segments (usually five) below the lumbar vertebrae, which are normally fused, forming the sacrum." *Dorland's Illustrated Medical Dictionary* at 2051 (Ed. 32, 2011).

3

B. **The Opinion of Plaintiff's Treating Physician, Dr. Carver**

Dr. Carver first treated Plaintiff in July 2001.[3] (R. at 343.) In his opinion dated September 15, 2008, he diagnosed Plaintiff with degenerative disk disease with a herniated nucleus pulposus and degenerative joint disease of the L-spine. (R. at 343.) Dr. Carver listed Plaintiff's primary symptoms as including right low back pain that radiated down to her thigh and which interfered with her sleep and activities of daily life. (R. at 343.) He also noted Plaintiff had occasional paresthesia.[4] (R. at 343.) Dr. Carver described her pain as an intensity of eight out of ten that had not been able to be completely relieved. (R. at 343.)

Dr. Carver marked that Plaintiff could sit, stand, or walk only zero to two hours a day. (R. at 344.) In his opinion, Plaintiff could not sit continuously in a work setting and could only occasionally lift less than ten pounds. (R. at 344.) Dr. Carver expected Plaintiff's impairments to last at least twelve months and to occasionally interfere with Plaintiff working at a computer. (R. at 344.)

In Dr. Carver's opinion, Plaintiff was easily aggravated and frustrated and could not focus. (R. at 345.) She had psychological limitations that stemmed from her chronic pain and medication and which also included a memory impairment, insomnia, and fatigue. (R. at 345.) Because Plaintiff's condition was worsening, Dr. Carver opined that Plaintiff could not keep a full-time competitive job that required activity on a sustained basis. (*See* R. at 345-6.)

---

[3] In a Functional Capacity Questionnaire dated June 10, 2008, Dr. Carver indicated Plaintiff's date of first treatment was February 5, 2004. (R. at 423.) He additionally indicated diagnoses of degenerative disc disease, lumbar sprain, lumbar spondylitis, satitiua and depression. (R. at 423.) He noted that Plaintiff could not stand, sit, or walk more than two hours during an entire eight-hour day, could rarely lift ten pounds and had frequent pain that would interfere with her concentration. (R. at 423.)

[4] Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Dorland's* at 1383.

4

On April 7, 2009, Dr. Carver updated his opinion. He included "diminished fine motor control" with his diagnoses of Plaintiff. (R. at 496.) He also noted that Plaintiff started using a cane on February 17, 2009. (R. at 497.) Dr. Carver added drowsiness, confusion, forgetfulness, and weakness as reported side effects of Plaintiff's medications. (R. at 489.)

### C. The Non-treating Physician's Opinion

On December 17, 2008, Dr. James Wickham, a state agency physician, completed a Physical Residual Functional Capacity Assessment of Plaintiff. (R. at 411-17.) In his opinion, Plaintiff suffered from degenerative disc disease, myofascial pain syndrome and lumbar facet arthropathy. (R. at 411.) Dr. Wickham concluded that Plaintiff could occasionally carry twenty pounds and frequently lift ten pounds, but that she could stand, sit or walk for only about six hours in an eight-hour workday. (R. at 412.)

In his opinion, Dr. Wickham noted that Plaintiff's gait, station, heel-toe and weight-bearing abilities were still intact and fairly normal. (R. at 416.) Dr. Wickham also summarized medical notes from Chippenham-Johnston Willis Pain Clinic ("CJW Pain Clinic") indicating that Plaintiff reported "constant throbbing, aching pain in her lower back and both buttocks," complained that her medication regimen was inadequate in relieving that pain, and "seem[ed] quite focused on taking her medications." (R. at 416-17.)

While Plaintiff indicated that her daily activities were significantly limited, Dr. Wickham noted such limitations were not consistent with her abilities, such as her ability to drive a car. (R. at 417.) Dr. Wickham determined that Plaintiff was partially credible based on her lack of response to the treatments she received. (R. at 417.)

5

### D. Dr. Crane's Letter to Dr. Carver

On January 29, 2009, Dr. Peter D. Crane of the CJW Pain Clinic wrote a letter to Dr. Carver at Plaintiff's request, so Dr. Carver could "'continue [Plaintiff's] medication regimen.'" (R. at 444-45.) In the letter, Dr. Crane detailed the multiple pain physicians that Plaintiff saw and interventional pain techniques that Plaintiff underwent. (R. at 444.) Plaintiff had not responded favorably to the treatments by the physicians. (R. at 444.) Dr. Crane indicated that Plaintiff took Tramadol, Percocet, and hydrocodone three to four times a day, an unusual regime possibly maintained by multiple doctors. (R. at 444.) Dr. Crane wrote that Plaintiff "seemed to be extremely focused on her narcotic regimen." (R. at 444.) He came to such a conclusion, because Plaintiff rejected other interventional pain techniques that could have given her more adequate relief, including a long-acting narcotic. (R. at 444.)

Dr. Crane went on to note Plaintiff's diagnostic medial branch blocks, which Plaintiff agreed to perform "very reluctantly." (R. at 444.) Dr. Crane again wrote that Plaintiff "is a patient who seems to be very focused on narcotic therapy as her sole means of obtaining relief." (R. at 444.) Because she failed to respond to interventional pain techniques, Dr. Crane wrote that Plaintiff was "not likely suffering from any of the conditions" he attempted to treat "or that her disease progress is so severe that injection therapy would not provide her any relief." (R. at 444.) Dr. Crane concluded that that Plaintiff was not likely suffering from her conditions. (R. at 444.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on July 15, 2008, claiming disability due to, among other things, degenerative disc and joint disease and depression with an alleged onset date of December 1, 2007. (R. at 136, 185; *see also* Pl.'s Mem. at 2.) The Social Security

Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[5] (R. at 72-93, 100-06.) On April 24, 2009, Plaintiff testified before an ALJ. (R. at 20.) On August 12, 2009, the ALJ issued a decision finding that Plaintiff was not under a disability. (R. at 28.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on March 11, 2011, making the ALJ's the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-3.)

### III. QUESTIONS PRESENTED

Did the Commissioner fail to weigh the opinion of Plaintiff's treating physician and, if so, was his subsequent decision supported by substantial evidence on the record and the application of the correct legal standard?

Did the Commissioner properly evaluate the credibility of the Plaintiff?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[5] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

7

To find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

8

("SGA").[6] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[7] based on an assessment of the claimant's residual functional capacity ("RFC")[8] and the "physical and mental demands of

---

[6] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[7] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[8] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

9

work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 1, 2007. (R. at 22.) In doing so, the ALJ specifically noted that Plaintiff worked part-time in the office of Dr. Carver, her primary care physician, from November 2007 to August 2008. At step two, the ALJ determined that Plaintiff was severely impaired from a disorder of the lumbar spine and an affective disorder. (R. at 22-24.) The ALJ noted Plaintiff's complaints of pain from the right hip down to the knee, but also noted that Plaintiff's physical examinations were normal and her x-rays showed some mild arthritis. (R. at 23.) In listing Plaintiff's complaints of pain, normal examinations and subsequent treatments, the ALJ summarized a letter from Dr. Crane to her treating physician, Dr. Carver, where Dr. Crane detailed Plaintiff's "unusual regimen of pain medicine," objection to a long lasting pain medicine to replace her short acting medicines, and reluctance in undergoing a diagnostic test to determine the nature of her pain. (R. at 23-24.) The ALJ also noted Dr. Crane's conclusion that Plaintiff was likely not suffering from the conditions being treated, as Plaintiff failed to respond to the interventional pain techniques. (R. at 24.)

At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 24.) In doing so, the ALJ noted that "no evaluating or treating physician has ever reported that [Plaintiff's] gait or station is anything but normal," nor has any treating physician indicated findings that are equivalent in the severity to the criteria of the listed impairments. (R. at 24.) The AJL went on to determine that "[t]he level of pain [Plaintiff] has spoken about at the hearing and to her medical treatment providers is not supported by the objective evidence" because there are only small and light findings of abnormalities. (R. at 26.) While Plaintiff's symptoms could reasonably be expected by her

impairments, the ALJ found "her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. (R. at 26.)

Next, the ALJ summarized Dr. Carver's answers to a questionnaire about Plaintiff's impairments and functional capacity. (R. at 26.) Dr. Carver reported that Plaintiff was diagnosed with degenerative disc disease with herniated nucleus pulposus and degenerative joint disease of the lumbar spine. (R. at 26.) The ALJ noted that Dr. Carver reported that Plaintiff's back pain radiated to her thigh and interfered with her sleep and daily activities. (R. at 26.) Dr. Carver estimated that Plaintiff could sit for up to two hours; stand and walk for up to two hours; lift and carry less than ten pounds; and perform reaching, handling, and fingering on a limited basis. (R. at 26.) Finally, the ALJ wrote that Dr. Carver noted that Plaintiff's medications caused impaired memory and fatigue and that Plaintiff had emotional issues arising from her chronic pain. (R. at 26.)

The ALJ did "not find support for [Dr. Carver's] opinion as stated on the questionnaire" because his treatment notes did not indicate that Plaintiff had a severely limited range of motion, ambulation or strength, as written by Dr. Carver in his opinion. (R. at 27.) Additionally, the ALJ noted that none of Plaintiff's many treating specialists have ever reported significant functional limitations. (R. at 27.) In rejecting Dr. Carver's opinion, the ALJ accepted the opinion of the non-treating state agency consulting physician who "found that [Plaintiff] had the [RFC] to perform light exertional level work with some postural limitations." (R. at 27.)

At step four, the ALJ assessed that Plaintiff is unable to perform any past relevant work. (R. at 27.) However, because Plaintiff was born in 1959 and is a "younger individual" who has completed high school and is able to communicate in English, the ALJ determined at step five

that Plaintiff was not disabled and that there were a significant number of jobs which Plaintiff could perform. (R. at 27-28.)

Plaintiff asserts that the ALJ erred in determining that Plaintiff was not disabled. (*See* Pl.'s Mem. at 16.) More specifically, Plaintiff complains that the ALJ failed to assign any weight to Dr. Carver's opinion. (Pl.'s Mem. at 10.) Plaintiff also asserts the ALJ applied an incorrect legal standard when she noted that Dr. Carver's opinion was not supported by his treatment notes or the notes of Plaintiff's other treating physicians. (Pl.'s Mem. at 11-12.) Finally, Plaintiff argues that the ALJ used an improper standard when evaluating Plaintiff's credibility. (Pl.'s Mem. at 14-15.)

Defendant argues that the ALJ gave little weight to Dr. Carver's opinion, because it was not supported by any of the medical evidence in the record. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 13.) Continuing, Defendant explains that the ALJ does not need to explain what degree of weight she assigned to Dr. Carver's opinion, because she explicitly gave it less weight than the non-treating state agency physician's opinion. (Def.'s Mem. at 15.) Finally, Defendant asserts that "the ALJ appropriately supported her credibility determination" and discussed the evidence that supported her decision. (Def.'s Mem. at 16.)

**A. The ALJ properly weighed the opinion of Plaintiff's treating physician and his decision was supported by substantial evidence.**

The issue raised in this appeal is, quite simply, whether the ALJ failed to analyze and assign weight to the opinion of Dr. Carver, Plaintiff's treating physician. (Pl.'s Mem. 10.) Plaintiff explains that Social Security Rule 96-2p requires the ALJ to give weight to a treating physician's opinion and not to reject that opinion. (Pl.'s Mem. at 10-11.) Plaintiff further complains that the Act and regulations do not require Dr. Carver's opinion to be supported by his treatment notes. (Pl's Mem. at 11.) Plaintiff cites to *Ray v. Astrue*, 649 F. Supp. 2d 391, 405

13

(E.D. Pa. 2009), in arguing that the medical notes of Dr. Carver and the other examining physicians "record ongoing, consistent complaints of disabling pain." (Pl.'s Mem. at 12.) Plaintiff also relies on *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985), when arguing that a lack of significant functional limitations in medical records should not limit the weight of a treating physician's opinion. (Pl.'s Mem. at 12-13.) In contrast, Defendant argues that the ALJ properly assigned Dr. Carver's opinion little weight, because the opinion was not corroborated by Dr. Carver's and other treating physician's notes and was not consistent with Plaintiff's medical records. (Def.'s Mem. at 13-16.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with other substantial evidence in the record. *Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 416.927(d)(2); SSR 96-

2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)-(4), (e).

The Court's role here is solely to evaluate the ALJ's decision and to determine whether the ALJ evaluated the evidence before him, as required under the Act. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004). In her decision, the ALJ summarized Dr. Carver's opinion. (*See* R. at 26.) However, she did not find support for his opinion based on the medical evidence provided in the record, because none of the evidence indicated that Plaintiff "had severely limited range of motion or ambulation or strength." (R. at 27.) More specifically, the ALJ noted that none of Plaintiff's treating specialists reported significant functional limitations. (R. at 27.)

Plaintiff relies on *Ray* and *Kane* in arguing the ALJ erred when she rejected Dr. Carver's opinion. The court in *Ray* found that a smaller amount of weight should have been assigned to medical records when evaluating an opinion of a treating physician, as there was a variety of treating physicians who differed in evaluating the claimant and making notations. *Ray*, 649 F. Supp. 2d at 404-05. The court also noted that an ALJ cannot interpret a doctor's silence of a claimant's limitation as no evidence. *Id.* at 405. Similarly in *Kane*, the court remanded a case, because the ALJ placed more weight on a one-time treating physician who never expressed any views on claimant's limitations. *See Kane*, 776 F.2d at 1135.

The medical records here not only detailed Plaintiff's regular complaints of lower back and thigh pain, but also indicated normal gait, station, and heal and toe weight bearing abilities. (*See* R. at 322, 320, 404.) Only one record did not rate Plaintiff's straight leg raise as normal. (*See* R. at 320.) All of these observations and examinations evinced Plaintiff's range of motion, ambulation, and strength. Unlike the physicians in *Ray* and *Kane*, Plaintiff's physicians evaluated and noted the limitations on which Dr. Carver opined.

While the ALJ must generally give more weight to a treating physician's opinion, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993, F.2d 31, 35 (4th Cir. 1992)). Since its decision in *Hunter*, the Fourth Circuit has consistently held that, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (citing *Craig*, 76 F.3d at 590); *see also* 20 C.F.R. § 416.927(d)(2).

"The ALJ may also flat-out reject any medical opinion contradictory to evidence in the record." *Ray*, 649 F. Supp. 2d at 404. That is exactly what the ALJ did here when she wrote that she did "not find support for the doctor's opinion as stated on the questionnaire." (R. at 27.) As explained above, the ALJ's rejection of Dr. Carver's opinion was explained and supported by substantial evidence. Accordingly, the ALJ did not err in rejecting Dr. Carver's opinion.

**B.     The ALJ provided specific reasons when evaluating Plaintiff's credibility.**

Plaintiff argues that the ALJ's finding that her level of pain was not supported by the objective evidence is an improper standard of evaluating credibility. (Pl.'s Mem. at 14.) Referring the Court to *Mickles v. Shalala*, 29 F.3d 918 (4th Cir. 1994), Plaintiff asserts that her subjective pain level could not be rejected based on objective medical evidence. (*See* Pl's Mem.

16

at 14.) Plaintiff also complains that the ALJ did not have a cogent discussion of the evidence while evaluating Plaintiff's credibility. (Pl.'s Mem. at 15.) Noting *Craig*, 76 F.3d at 595, Defendant asserts the ALJ must consider Plaintiff's subjective complaints of pain, but should weigh such pain against the medical evidence and, if necessary, reject Plaintiff's complaints. (Def. Mem. at 17.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) & 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. The ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).

If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the

17

extent of the symptoms. The ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

It is well established that Plaintiff's subjective allegations of pain are not alone conclusive evidence that Plaintiff is disabled. *See Mickles*, 29 F.3d at 919. The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Here, the ALJ determined that Plaintiff's claimed level of pain was not supported by the MRI and x-ray reports that "demonstrated small and slight findings and physical examinations [that] revealed few abnormalities." (R. at 26.) The medical records to which the ALJ was referring was summarized earlier in the ALJ's decision. (*See* R. at 22-24.) While the medical records noted Plaintiff's extensive complaints of pain and prescriptions for pain medication, an MRI report indicated mild disc space narrowing. (R. at 395-96.) Physical examinations indicated Plaintiff's normal gait, station, and heal and toe weight bearing abilities. (*See* R. at 322, 320, 404.) Additional evidence in the record also questioned the veracity of Plaintiff's level

18

of pain based on her failure to respond to medication. (R. at 444.) Substantial evidence exists to support the ALJ's determination of Plaintiff's credibility.

Additionally, the ALJ properly explained her decision. First, she summarized the medical records pertinent to Plaintiff's claim. She then discussed Plaintiff's level of pain and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her intensity, persistence, and limiting effects of the symptoms were not entirely credible based on the objective medical evidence. (R. at 26.) Such an evaluation is not contrary to the legal standards set forth in *Craig. See* 76 F.3d 595-96. Therefore, the ALJ did not err when evaluating Plaintiff's credibility.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand (ECF No. 9) be DENIED; that Defendant's motion for summary judgment (ECF No. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ David J. Novak
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: May 25, 2012